Our first case this morning is Schwindt v. Miller. You may proceed. Good morning, Your Honors. May it please the Court. My name is Jeff Bockrott, and along with Robert Shulman, I represent Appellant Jeffrey Schwindt. I'd like to begin by focusing on three facts, which I believe on this record are undisputed. And the first is that when Mr. Schwindt became involved and started working with the Miller Party, the device that the Miller Party was developing at the time had a reciprocal-only motion, and he was hired to actually add a pneumatic component to this reciprocal-only device. And it wasn't until later, after Mr. Schwindt became involved, that the idea of adding a rotationally-pneumatic motor became put into place. And the Board overlooked this important fact in its decision when it seemed to assume that the tissue-cutting device that the Miller Party had been developing when they contacted Schwindt had all elements of the count. It seems to me, to the extent I've been through it, Mr. Miller claims that he had the idea or whatever in May of 2000, and he told Mr. Schwindt to proceed. Mr. Schwindt says that that conversation never took place, and that the purchase order demonstrates that he thought up the idea. At bottom, isn't this your classic he said, she said? And if that's the case, and if that's what we conclude, then at the end of the day, I know there's a dispute about what the burden is, but there's no dispute that you have the burden here. So why doesn't that just resolve the matter for us? Because the test for conception requires a definite and permanent idea of the complete and operative invention, and there are critical elements that are lacking in that showing, which is that there is no... Wait, the showing, you're saying that the other side was required to make a showing? No, no, but it's undisputed, and this is the second undisputed fact I want to get to, that Mr. Schwindt was the one who suggested using the Bain type motor, which is an aspect of the only embodiment disclosed in the patent that the count corresponds to. So Mr. Schwindt... But this case isn't about that one embodiment, it's about the rotary motor. There might be one embodiment, but that's not sufficient to get him to the conception as a co-inventor, right? It's the only operative rotary motor that can be used. The Bain type motor is the only one that can be used, and it's undisputed that Mr. Schwindt contributed that aspect of it. In addition, he went on to design the hydraulic system shown in Figure 10. It's undisputed that he designed that as well. Those are two elements of the count that we believe satisfy the contributing to the conception element that Mr. Schwindt was required to prove. Without those, you don't have a complete conception. That's the problem. Well, but there's a distinction between actually contributing to the conception and being hired to implement the conception. And isn't that really all Mr. Schwindt was here? Hired to implement someone else's conception? Were the case that you had a complete conception beforehand, then that would be the hypothetical that you gave. But the problem here is that Miller never had a complete conception. They lacked the Bain type motor. They lacked the operable system or one that would operate a system for actually making a rotary motor and a reciprocal motor work in a tissue cutting device. Without that, the invention doesn't work. I'd like to also focus or turn to the fact that there are three legal errors that I'd like to focus on. First, in the board's decision, our main point in terms of their legal error was that they failed to apply the correct test for conception because what they did essentially was to ignore that Mr. Schwindt's contribution by trying to say that Miller actually conceived the invention first. And the problem is that when you apply the test for conception, which requires the definite and permanent idea of the complete and operative invention as applied in practice, Miller simply didn't have it. And they admitted that Mr. Schwindt came up with the Bain type motor and ultimately came up with Figure 10. And that's the main error that the board made and it affects every aspect of their decision. But we think that the court need not go into the he said, she said aspect of it because you can decide this case on the fact that a conception requires a complete and operative, an idea of the complete and operative invention. Without Mr. Schwindt's contribution, nobody had it. The second error that the board made was its reliance on the Labus Declaration. This confuses the test for obviousness with the test for conception. In Dawson v. Dawson, this court articulated the fact that conception is not a question of what would have been obvious to a person of ordinary skill in the art, but what was actually in the minds of the co-inventors. Now, one thing we'd like to make clear here is that there's a distinction between the situation where a first inventive entity actually comes up with a complete conception and then a collaborator will add an alternative embodiment to that conception. That alternative embodiment is obvious, then that collaborator's contribution will not be sufficient. But we have a different situation here because there never was a conception without Mr. Schwindt actual contribution. I mean, you argue that the board, that it's a legal error for the board to have even considered the fact that this was something within the can of somebody of ordinary skill in the art and it was something essentially off the shelf, almost literally off the shelf, off of his shelf. But isn't it really what the board said? Was not so much that that's the test, but that it is a factor to consider when you're of showing his own conception. No, it's not a factor. It's our position that the conception test is completely distinct from the obviousness test when you're talking about the first conception, the first complete picture of the complete operative invention. So it's not a question of whether you can take apart individual contributions to that initial conception and say that certain contributions within the count are obvious. We don't think that that's the law at all. So can you point us to what exactly the statement in the board opinion that you're saying establishes that they slide the wrong path? They, let's see the exact quote. You're saying it's legal error. They relied on the Labus Declaration very heavily. And what the Labus Declaration is, is to say that Mr. Schwentz, the elements he contributed, they're trying to say would have been obvious. Did Mr. Schwentz have any prior experience with biopsy devices? He did not, but when they actually brought him on board to develop the first device that has a reciprocal only, they spent hours teaching him about how this worked. By the time conception occurred for the later device, he was... I also note that the record shows no evidence that Mr. Schwentz had any understanding of the benefits of a rotational motion. I don't think that's the case. Can you show me in the record where he is the one who's initiating the value of a rotational motion here? Well, that's part of his testimony and it's corroborated by the purchase order that he actually purchased that element. And he was the one who actually recognized that a vane type motor is the type that you would need to use in this. Now, they also had a... That could be, again as Judge O'Malley suggested, an implementation of a conception rather than the conception itself very easily, right? No. It's actually very important to recognize that. A type of motor? Isn't that... Right. Because the Rose-Hulman Venture... Under the... If we hypothetically had the named inventors telling Mr. Schwentz, we need you to have a reciprocal and rotating motion, please put this into effect. Would that be the end of your case? No, because you actually need to have the knowledge of using a vane type rotary motor. You have to understand Mr. Schwentz was actually well-versed in the type of motors that could be used. And right off the bat, initially he said, use the vane type motor. That's the only type that's disclosed in the patent. And there was a report commissioned by Rose-Hulman... Rotary, specific rotary motors that you could use and found that several of the rotary motors don't work and that vane type was the only one that they recommended. This publication came out after the patent was already filed. Wait, did you say that they recommended? Did they... Did that study say that no other rotary motors would work? It said that they either wouldn't be recommended or work or that further investigation was needed. And by the way, this report came out after and I think late November after the application had already been filed. Now, Judge Prost has asked you this question, but if you wouldn't mind stating again for me, what would be your best evidence to cause us to reverse the fact-finding done down below? We're not able to contradict their facts unless you've got something really powerful. What is that? It is actually all the evidence that is of record. There's the first prototype of the device, which clearly shows it had only reciprocal action. All of the previous conception documents that's relied on by Miller, during the deposition they admitted that it was only rotational motion. So the fact is clearly established. And by the way, it's not a fact-finding problem. It's an analysis problem. The board overlooked the evolving design of the tissue cutter. The fact that it didn't have all elements in place when Mr. Schwent was first contacted. But even at a higher level, beside that point, you actually need to have a complete and operative conception without Mr. Schwent's contributions of the vane-type motor and the actual hydraulic system of Figure 10. That didn't occur. And in fact, really the first complete and operative description within the corroborating document is Figure 10, which shows a rotary and a reciprocal pneumatic device connected to a source of pressurized fluid, just as required by the count. Without that, there is no earlier conception document. And that's admitted by the other side to be Mr. Schwent's contribution. And then the last legal error that we want to point to in the board's opinion, and this is all throughout the opinion, is that they discounted Mr. Schwent's contributions because they're a species of what's recited in the count. What I mean specifically is the count recites a hydraulic rotary motor. Mr. Schwent came up with a vane-type motor. And they faulted Mr. Schwent for not having had the vane motor recited in the specific count, but that's just clear. The question is whether... That's not irrelevant. The claim is broader than just the vane motor. Right. The vane motor doesn't get you very far, does it? And it seems like you rest a lot of your case on his alleged invention of that aspect of the motor. It's a very typical situation that the conception evidence is a species of what's recited in the count. And in Ethicon versus U.S. Surgical, the court made absolutely clear that it's a question of whether the species or what's conceived falls within the scope of the count. And the court was very explicit in stating that. And the board got that wrong. Want to save your rebuttal? Yes, I would. Okay. Thank you. Ms. Pirazzolo? May it please the court. My name is Lisa Pirazzolo, and with my colleagues, David Kavanaugh and Owen Allen, I represent the Miller party and the real party in interest, Hologic. The board's conclusion that Mr. Schwint should not be added as a co-inventor to the 824 patent is supported by substantial evidence and should be affirmed. The board properly found that Mr. Schwint failed to prove that he contributed to conception of any element of the claimed tissue-cutting device. Well, you heard your friend this morning, as did we, and he relies heavily on the vane motor, which he thinks is the central part of this invention, and figure 10. So what is your response to his arguments with respect to that? Our response to that, Your Honor, is the vane motor is not specified in the claim. The claim says rotary hydraulic motor. And the board carefully looked at the factual evidence regarding conception of the rotary hydraulic motor. But when you say carefully looked at the evidence, I mean, there really isn't anything that says that the Mark Miller team came up with the concept of a rotary motor. Well, there is, Your Honor. If you look at Mr. Miller's testimony, which is at A2901 in the record, Mr. Miller testified that in late May 2000, he decided that the inner cannula should not only move reciprocally but rotationally, and that he told Mr. Schwint to implement that concept with an air motor. And that rests upon the board's finding they considered separately who came up with the idea of the use of hydraulic motor in this tissue-cutting device. And there was overwhelming evidence that the Miller party thought of using air motors before they even contacted Mr. Schwint. So the evidence that the board considered had the Miller party, who had memos going back as early as March 1998, where they outlined the prototype for their breast system. The number one criteria was a pneumatic foot switch drive. None of that has any reference to the rotary motor, though, at that point in time. At that point in time, the Miller party was doing testing on breast tissue. They were the ones that had experience in developing biopsy devices and tissue morcellation devices. They were doing testing, and that's what Mr. Miller testified, that they determined part of the goal here was to develop a biopsy device that would take appropriate samples for analysis. And Mr. Miller and Mr. Mark, after doing testing, determined that they should have a rotary movement to get larger tissue. That was in January of 2000, and they hired Mr. Schwint in March. Is that correct? Is that the timing? Well, Mr. Miller's testimony on settling on the rotation was May 2000. When did they start the testing on rotation? I'm not sure when the actual testing on rotation started. They were starting to take tissue samples in breast tissue. There's a memo in the record as of March 1st, 2000, where they used their device. I think then it only had the reciprocation to take tissue samples, but by May, Mr. Miller testified he had determined that rotation was needed to get large enough tissue samples. Can I ask you about just the record and the appendix, because I had a little trouble navigating? With regard, in his declaration, he says that he wrote a status report in May of 2000 promoting a rotating scheme, and the citation is to exhibit 1025, and 1025 is listed in the table of contents, but it says it's found at A2221 and 22, and those pages don't have that on it. Do you know, have you recognized some confusion there in terms of the citation? Well, I think in an effort to not, the entire record that's referred to in that index is five binders of documents, and I think when the appendix was assembled, only the specific record pages that were cited in the brief. But it's a critical memo that you cite repeatedly and say this is the key evidence of your client's conception, so why isn't it in the appendix? Well, we cited Mr. Miller's declaration, I believe, but we're happy to provide the memo. But the board correctly found that there was no evidence that Mr. Schwint contributed to the conception of having a rotary motor in the device. Everyone concedes, though, that figure 10 was drawn up by Mr. Schwint, right? That's correct. And that's the only place where you see any evidence of the pneumatic system and the rotary motor, right? Well, no, there was Mr. Miller's testimony that... I mean, the only place in the written description or in the patent itself that you see any evidence. Well, there's reference in the patent to rotation of the device and the specification. And the evidence that existed on the rotary motor was Mr. Miller's declaration. There was ample evidence that the whole idea, before they even went to Mr. Schwint, was to have a device that used an air motor so it would be compatible with MRI. So the determination by the inventors, based on their experience with biopsies, was that they were adding the rotation and they were just going to Mr. Schwint to implement their idea of this device being operated by an air motor. How do you respond to the argument about the Rose-Hulman report that said that really only one type would work, and it's Mr. Schwint that's pointed you all to the correct type? Well, the Rose-Hulman report, I don't think, says only one type would work. And Dr. Labus testified, and the board accepted his testimony, he was an expert in pneumatics, that there was nothing unique about Mr. Schwint's design of the device. He used off-the-shelf parts, and it was routine, and anybody of ordinary skill could have implemented a schematic or diagram of the sort that Mr. Schwint implemented. But the problem was that your clients weren't of ordinary skill in the art of pneumatics and rotary motors, correct? Well, I don't think the board found that. In fact, the board, I actually found that Mr. Mark had worked for a pneumatic device company and had some experience with pneumatics. They certainly relied on Mr. Schwint to actually do the circuit design, but there was mention of the Ethicon case, and that case quite clearly says one of ordinary skill in the art who simply reduced the inventor's idea to practice is not necessarily a joint inventor, even if the specification discloses that embodiment to satisfy the best mode requirement. So here, the evidence, the board's findings that Mark and Miller conceived of the idea to use hydraulics before Mr. Schwint was involved, and Mr. Schwint failed to present any evidence that he conceived of the rotary motor, was supported by substantial evidence. And Mr. Schwint also, although he argues that his work was needed to demonstrate conception, the board accepted Dr. Labus's, Mr. Labus's testimony that what Mr. Schwint did was routine experimentation, ordinary, nothing special, was not needed for conception. So the board really considered every aspect of Mr. Schwint's arguments in terms of did he prove that he contributed to conception of these two elements of the device, and they found he did not, and they considered his other arguments that his vane motor was necessary for conception and found there was no real evidence to prove that, particularly in light of Dr. Labus's testimony. Mr. Hancock, a PROMEX employee, testifies, fact finding 26 is pointed out, no one at PROMEX could have created the pneumatic circuit that was shown in figures 10 and 11. What's the response to that? I don't think that we reject Mr. Hancock's testimony. I think what Mr. Marks had experience with pneumatics, I don't think we contend that he could have designed or tried to design the circuit. I think the point was, and Mr. Labus's testimony went to this issue, that they could have gone to any number of people other than Mr. Schwint to get a design of a pneumatic circuit, and that that was routine, and Dr. Labus went through and said there was nothing out of the ordinary. That circuit design is a engineering feature, not an inventive feature. That's correct. Is that your point? It's really just implementation of the idea that the Mark and Miller party had. Are there any other questions from the panel? Thank you, Ms. Pierzola. Paul Fred? Okay, so the reason why the status report from May 2000 isn't in the joint appendix is because our opponents haven't cited it in their appellee briefs. They don't rely on it, and that's the problem with their case. They're relying on uncorroborated testimony to establish prior conception by Miller party, and they don't have it. Again, we'll keep harping on this, but it's not their burden. They don't have to establish prior conception. You do. That's right, but our burden is to show that we had, prior to the patent being filed, that we had a contribution to the conception. The board tried to leap around our evidence and say, even before that, Miller party conceived the invention. We think that there at least needs to be substantial evidence supporting a complete conception by the Miller party for the board to do that, and that's the problem. We don't have the burden, but there needs to be some evidence. Otherwise, anybody can come in and say, since we're the senior party, we invented it first. On the Rose-Hulman Ventures report, this is at A4074 to 4075, it says rotary vane motor is recommended. Piston, do not consider. Diaphragm, may research further. Oscillating, recommended. Do not use unless pulsed air supply is available. Impulse turbine, do not consider because of limited torque. Impulse propeller, do not consider because of limited torque. This is a report that came out after the patent application was filed. The vane type rotary motor is the only rotary motor that's disclosed in the application. It's the only one that's shown to work. And then finally, they cited Ethicon, and there's a statement in Ethicon about somebody just does something with ordinary skill to reduce invention to practice that's not inventive, but our point there is you need to have a conception. You need to have a conception by one party. Then when the collaborator comes in and reduces it to practice, that doesn't make the collaborator an inventor, but if there's no complete conception, then you don't get to that point. Unless there's further questions, that's all I have. Thank you very much, Mr. Buckrodt.